# In the United States Court of Federal Claims

No. 13-906C

(Filed: February 10, 2015)

| | | |
|---|---|---|
| ************************************* | ) | Dispute over costs allowable under a grant |
| | ) | for a noise abatement program at an |
| **TULSA AIRPORTS** | ) | airport; displacement of jurisdiction |
| **IMPROVEMENTS TRUST,** | ) | provided by the Tucker Act because of |
| | ) | exclusive jurisdiction available under |
| **Plaintiff,** | ) | either 49 U.S.C. § 47111, or alternatively, |
| | ) | 49 U.S.C. § 46110; transfer to the United |
| v. | ) | States Court of Appeals for the Tenth |
| | ) | Circuit; 28 U.S.C. § 1631 |
| **UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| ************************************* | | |

Andrea Stailey Hoskins, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, Oklahoma, for plaintiff. With her on the briefs were John Hickey, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, Oklahoma, and Steven K. Metcalf, McDonald, McCann, Metcalf & Carwile, L.L.P., Tulsa, Oklahoma.

Meen Geu Oh, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Stuart F. Delery, Assistant Attorney General, Civil Division, Robert E. Kirschman, Jr., Director, and Kirk T. Manhardt, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

**OPINION AND ORDER**

LETTOW, Judge.

Plaintiff, Tulsa Airports Improvement Trust ("Tulsa Airports") brought this action on November 14, 2013, invoking jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1), and seeking reimbursement of payments made to Cinnabar Service Company ("Cinnabar"), a private contracting firm, for noise abatement work. The pertinent payments compensated Cinnabar for delay costs associated with work completed in furtherance of a Noise Abatement Program funded under grants from the Federal Aviation Administration ("FAA"). Am. Compl., ECF No. 17-1. Tulsa Airports alleges that the FAA wrongfully determined that the payments were "'not allowable grant costs'" eligible for funding under two grants for noise abatement, forcing Tulsa Airports to bear the costs. Am. Compl. ¶ 37.

The government filed a motion to dismiss pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), contending that this court lacks jurisdiction over the dispute because either 49 U.S.C. § 46110, or alternatively, 49 U.S.C. § 47111, vest exclusive jurisdiction over Tulsa Airports's claims in one of two United States Courts of Appeals. Def.'s Mot. to Dismiss Pl.'s First Amended Compl. ("Def.'s Mot.") at 1, 10, ECF No. 24 at 1. In addition, the government avers that plaintiff's claims are time-barred under 28 U.S.C. § 2501. *Id.* Finally, the government requests that the court dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6) on the grounds that Tulsa Airports has failed to plead damages. *Id.*

A hearing on this motion was held on January 15, 2015. The motion is fully briefed and accordingly is ready for disposition. For the reasons stated, the court denies the motion to dismiss and transfers the case to the United States Court of Appeals for the Tenth Circuit.

**BACKGROUND**[1]

Beginning in the mid-1990s, Tulsa Airports administered and executed a Noise Abatement Program in the vicinity of the Tulsa International Airport ("the Airport") pursuant to 14 C.F.R. Part 150. Am. Compl. ¶ 5. To carry out the program, plaintiff regularly received federally funded grants from the FAA pursuant to the Airport and Airway Improvement Act of 1982, Pub. L. No. 97-248, 96 Stat. 671 (in relevant part, as added, recodified, and amended, at 49 U.S.C. §§ 47101-47142). Def.'s Mot. at 2-3; Am. Compl. ¶ 9. The grants were intended to reimburse 80 to 90 percent of eligible Noise Abatement Program costs; remaining funds were to be provided from the Airport's own resources. Am. Compl. ¶ 9. The Noise Abatement Program lasted for over ten years and incorporated two phases. Am. Compl. ¶¶ 6-8. In the first phase, Tulsa Airports purchased outright 500 severely-impacted homes near the Airport. Am. Comp. ¶ 7. In the second phase, plaintiff targeted 1,700 homes in zones that were less severely affected by noise and offered homeowners in those locations the opportunity to participate in a sound attenuation program, including improvements such as adding insulation to make existing homes more noise resistant. Am. Compl. at ¶ 8. Tulsa Airports completed the first phase itself. *Id.* To carry out the second phase, Tulsa Airports sought assistance, and in September 1999, with the approval of the FAA, issued a "Request for Proposals for Noise Mitigation Professional Services." Am. Compl. ¶ 10. Cinnabar was the successful bidder. Am. Compl. ¶ 11. On April 13, 2000, plaintiff and Cinnabar executed a written Contract for Professional Services, stipulating that Cinnabar would perform some direct services associated with the project and subcontract specialized work to others. Am. Compl. ¶¶ 12-13.

The pace of the noise abatement project was driven by Tulsa Airports's receipt of FAA grants. Am. Compl. ¶ 18. To obtain grants, Tulsa Airports would submit applications to the FAA, and the FAA would respond with a grant agreement which in turn would be "accepted" by plaintiff. Am. Compl. ¶ 15. Tulsa Airports received reimbursement from the FAA via automatic deposit only after submitting a request based on costs actually incurred by the contractors

---

[1] The recitation of background does not constitute findings of fact by the court and is provided solely to establish a context for deciding the currently pending motion. Unless otherwise noted, however, the circumstances appear to be undisputed.

carrying out the program. *Id*. The present action arises out of two specific grants: Grant No. 3-40-0099-47-2003 ("Grant 47") and Grant No. 3-40-0099-50-2004 ("Grant 50"). Am. Compl. ¶ 19. Grant 47 provided $6,000,000 in federal funds for "airport development or noise program implementation" and required the FAA to pay Tulsa Airports 90 percent of "'allowable project costs.'" Am. Compl. ¶¶ 20-21.[2] Grant 50 provided $6,298,000 in federal funds for "airport development or noise program implementation" and required the FAA to pay plaintiff 95 percent of "'allowable project costs.'" Am. Compl. ¶¶ 22-23.[3] Both Grant 47 and Grant 50 contained provisions allowing the FAA to adjust payments upward or downward at any time up to the closing of the grants and provided that "[f]inal determination of the United States' share [of allowable project costs] will be based upon the final audit of the total amount of allowable project costs and settlement will be made for any upward or downward adjustments to the [f]ederal share of costs." Am. Compl. ¶ 25. During the course of the project, it was not an uncommon practice for the parties to seek adjustments while a grant was still open or after a grant was closed. Am. Compl. ¶ 26.[4]

The parties' dispute first surfaced in December 2002, when Cinnabar informed Tulsa Airports that total billings for the project exceeded grant funding. Am. Compl. ¶ 29. Believing that a further FAA grant would be issued in the near future, Tulsa Airports on December 10, 2002 agreed to allow Cinnabar to advance necessary funds and complete the 70 homes under construction at the time. Am. Compl. ¶ 30. Meanwhile, work not yet commenced was put on hold pending approval of future FAA grants, and all contractors, subcontractors, and consultants were placed on "stand by" status. Am. Compl. ¶¶ 30-31. Eventually, the stand-by period stretched over 90 days and some subcontractors demanded contract increases or terminated their contracts. Am. Compl. ¶ 32.[5] As a direct result, Cinnabar made payments to subcontractors amounting to $705,913.40. Am. Compl. ¶ 34. Later, Tulsa Airports sought and received reimbursement from the FAA for the payments. Am. Compl. ¶ 35. However, on July 6, 2006, the FAA demanded that plaintiff repay $252,921.37 on the grounds that "'contract delay/escalation costs'" were "'not allowable for federal participation.'" Am. Compl. ¶ 36. Similarly, on August 11, 2008, the FAA demanded repayment of $403,653.00 on the grounds that "'labor costs associated with work suspensions and cost escalation in performance'" were

---

[2]The FAA extended the offer to enter into Grant 47 to the City of Tulsa and Tulsa Airports on July 21, 2003, and the offer was accepted and executed by Tulsa Airports and the City of Tulsa on July 25, 2003 and July 28, 2003, respectively. Am. Compl. ¶ 20.

[3]The FAA extended the offer to enter into Grant 50 on April 8, 2004, and the offer was accepted and executed by Tulsa Airports on April 20, 2004 and by the City of Tulsa on April 27, 2004. Am. Compl. ¶ 22.

[4]*See* Hr'g Tr. 45:13-23 (Jan. 15, 2015). Further citations to the transcript of the hearing held on January 15, 2015 will omit a reference to the date.

[5]The stand-by period ended on July 25, 2003, when Tulsa Airports officially accepted a grant approved for an additional $6 million. Am. Compl. ¶ 33; *see also* Def.'s Mot. at 3.

"'not allowable grant costs.'" Am. Compl. ¶ 37. Tulsa Airports reimbursed the FAA for these amounts.[6]

On January 23, 2012, Tulsa Airports submitted a claim to the regional FAA office in Fort Worth, Texas, requesting that the FAA reconsider its prior demand that Tulsa Airports repay approximately $656,000 under Grants 47 and 50 and instead pay Tulsa Airports that amount as eligible costs associated with actual work done on the Noise Abatement Program. Am. Compl. ¶ 38. On May 8, 2012, the FAA stated that it declined to reconsider the eligibility of the payments under either Grant 47 or 50 until after Tulsa Airports "completed all actions necessary to draw down all remaining funds under Grant 47." Am. Compl. ¶ 38; Pl's Resp. to Def.'s Mot. To Dismiss Pl.'s First Am. Compl. ("Pl.'s Opp'n") at 3-4, ECF No. 27.[7] In the following months, Tulsa Airports submitted invoices to the FAA to draw remaining Grant 47 funds, and ultimately the FAA issued notice that Grant 47 was closed as of September 26, 2012. Am. Compl. ¶ 39. On October 4, 2012, Tulsa Airports resubmitted its request for approval of the payments, and on October 24, 2012, the FAA responded with a letter rejecting plaintiff's request for reconsideration and noting that additional reviews of the Grants "would not be considered an efficient use of resources." Am. Compl. ¶ 40; Pl.'s Opp'n at Ex. 1. On December 6, 2012, Tulsa Airports submitted a claim to the FAA's headquarters in Washington, D.C. reiterating its request for approval of the payments as eligible costs associated with actual work done on the Noise Abatement Program. Am. Compl. ¶ 41. The FAA's Associate Administrator for Airports subsequently issued a letter on December 31, 2012, declining reimbursement. Am. Compl. ¶ 42; Pl.'s Opp'n at Ex. 2.

## ANALYSIS

### I. The Government's Motion to Dismiss

*A. Subject Matter Jurisdiction*

Before proceeding to the merits, the court must first "satisfy itself that it has jurisdiction to hear and decide a case." *Hardie v. United States*, 367 F.3d 1288, 1290 (Fed. Cir. 2004) (quoting *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1241 (Fed. Cir. 2002)) (internal quotation marks omitted). When addressing a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, the court will "normally consider the facts alleged in the complaint to be true and correct." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). It is the plaintiff's burden to allege "in his pleading the facts essential to show [subject matter] jurisdiction" by a preponderance of the evidence. *McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936);

---

[6]Tulsa Airports repaid $252,921.37 in contract delay and escalation costs by check, Am. Compl. ¶ 36, and $403,653.00 in "labor costs associated with work suspensions and cost escalation in performance" was withheld by the FAA from Grant 50, Am. Compl. ¶ 37.

[7]The FAA's statement was contained in a letter sent from the FAA to then-Congressman John Sullivan after Cinnabar sought Mr. Sullivan's aid and he contacted the FAA on Cinnabar's behalf. Am. Compl. ¶ 38.

*see also Thomson v. Gaskill*, 315 U.S. 442, 446 (1942); *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002); *Reynolds*, 846 F.2d at 748.

      Tulsa Airports premises this court's jurisdiction on the Tucker Act, 28 U.S.C. § 1491(a)(1), averring that Grants 47 and 50 constituted contracts between it and the FAA, which the FAA breached by failing to reimburse Tulsa Airports for allowable project costs. Am. Compl. ¶ 45. The Tucker Act grants this court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Act waives sovereign immunity, allowing a claimant to sue the United States for monetary damages. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). "[U]nless the Tucker Act has been displaced or modified by explicit federal statutory law or treaty," the Act grants this court general jurisdiction over claims arising under contracts with the federal government. *Boston Edison Co. v. United States*, 64 Fed. Cl. 167, 175 (2005). "The [displacing] exceptions [to Tucker Act jurisdiction] are few and far between." *Id.* (citing as an example a provision of the Pacific Northwest Electric Power Planning and Conservation Act, 16 U.S.C. § 839f(e)(5), granting exclusive jurisdiction to a regional circuit, the U.S. Court of Appeals for the Ninth Circuit, to review actions of the Bonneville Power Authority that would otherwise overlap with this court's jurisdiction under the Tucker Act); *see also United States v. Bormes*, __ U.S. __, __, 133 S. Ct. 12, 18 (2012) (stating that in a jurisdictional context, as elsewhere, "a 'precisely drawn, detailed statute pre-empts more general remedies'") (quoting *Hinck v. United States*, 550 U.S. 501, 506 (2007) (in turn quoting *EC Term of Years Trust v. United States*, 550 U.S. 429, 434 (2007))).

      The government challenges this court's subject matter jurisdiction, arguing that either 49 U.S.C. § 46110, or, in the alternative, 49 U.S.C. § 47111, displace the court's jurisdiction under the Tucker Act by expressly granting exclusive jurisdiction over Tulsa Airports's claims to one or the other of two United States Courts of Appeals. Def.'s Mot. at 7-11.

      Section 46110 is a general jurisdictional statute providing for judicial review of actions taken by the Department of Transportation, and states:

> [A] person *disclosing a substantial interest in an order issued by the Secretary of Transportation* . . . may apply for review of the order *by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business*. The petition must be filed not later than 60 days after the order is issued. The court may allow the petition to be filed after the 60th day only if there are reasonable grounds for not filing by the 60th day. . . . When a petition is filed . . . the court has *exclusive jurisdiction* to affirm, amend, modify, or set aside any part of the order.

49 U.S.C. § 46110 (a)-(c) (emphasis added).

As a secondary alternative, the government cites 49 U.S.C. § 47111, a specific grant of jurisdiction for review of disputes over grant funds, as also displacing jurisdiction under the Tucker Act. Def.'s Mot. at 10 n.2. Section 47111(d) provides, in pertinent part:

> A person adversely affected by an order of the Secretary [of Transportation] withholding a payment [under a grant agreement] may apply for review of the order by *filing a petition in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the project is located*. The petition must be filed not later than 60 days after the order is served on the petitioner.

49 U.S.C. § 47111(d)(3) (emphasis added).

In a different factual context, another judge of this court has concluded that 49 U.S.C. § 46110 provides a design for exclusive jurisdiction and, where applicable, displaces jurisdiction under the Tucker Act. *See, e.g.*, *Pucciariello v. United States*, 116 Fed. Cl. 390, 408 (2014) (finding "the specific and exclusive jurisdictional authority granted to the federal courts of appeals in 49 U.S.C. § 46110 controls and takes precedence over the general and non-exclusive jurisdictional authority afforded by the Tucker Act."). In like vein, a number of courts of appeals have reached the same conclusion respecting the exclusive nature of jurisdiction under 49 U.S.C. § 46110. *See Bitz v. Napolitano*, 700 F.3d 733, 740 (4th Cir. 2012) ("Congress clearly expressed its intention that any legal challenge to a § 46110 order, including a proceeding like the one at bar, be brought in the first instance in a court of appeals."); *Jones v. United States*, 625 F.3d 827, 829 (5th Cir. 2010) ("Section 46110(a) of the Federal Aviation Act vests the exclusive jurisdiction over challenges to FAA orders in certain United States Courts of Appeals."); *Americopters, LLC v. Federal Aviation Admin.*, 441 F.3d 726, 732 (9th Cir. 2006) ("We have direct and exclusive jurisdiction over the review of FAA final orders under 49 U.S.C. § 46110."); *see also St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 628 (7th Cir. 2007) (stating that "exclusive jurisdiction" over disputes concerning airport development provisions rests in the court of appeals).

In the government's view, either Section 46110(a) or Section 47111(d) apply because the pending dispute involves a challenge to a "FAA order." Def.'s Mot. at 7-11. The government contends that FAA actions constitute orders under these jurisdictional provisions "so long as they determine 'rights and obligations,' or have 'legal consequences.'" *Id.* at 8 (citing *City of Dania Beach, Fla. v. Federal Aviation Admin.*, 485 F.3d 1181, 1184 (D.C. Cir. 2007)). Accordingly, the government avers that the letter issued on December 31, 2012 by the FAA's Associate Administrator for Airports declining to find "'that there are potentially eligible costs that have not been reimbursed,'" *id.* (quoting Am. Compl. ¶ 42), qualifies as an order because it determined Tulsa Airports's right to reimbursement and had legal consequences, evidenced by plaintiff's subsequent filing of a breach of contract claim, *id.* at 9.

Tulsa Airports resists the government's characterization of the Assistant Administrator's letter of December 31 as an order by positing that "when the FAA failed to make the reimbursements at issue, it was acting[] not in a rulemaking, rule enforcement, or adjudicative capacity, but in its own interest as a party to a contract." Pl.'s Opp'n at 1, 4. Tulsa Airports

6

emphasizes that the FAA did not follow the statutorily prescribed procedural requirements for withholding payments. In that respect, Paragraph 47111(d)(1) provides that:

> The Secretary may withhold a payment under a grant agreement under this subchapter for more than 180 days after the payment is due only if the Secretary —
>     (A)  notifies the sponsor and provides an opportunity for a hearing; and
>     (B)  finds that the sponsor has violated the agreement.

49 U.S.C. § 47111(d)(1). The government does not dispute that "[t]here was no hearing, rulemaking procedure, or other administrative process involved in the FAA's decision." Pl.'s Opp'n at 4; *see* Def.'s Reply in Support of its Mot. to Dismiss Pl.'s Am. Compl. ("Def.'s Reply") at 3, ECF No. 30 ("T[ulsa Airports's] argument that there was no formal adjudicatory process or that it was not granted a hearing is immaterial."). Further to the point, Tulsa Airports notes it submitted voluminous materials to the FAA, and the FAA responded within a particularly short time, *see* Hr'g Tr. 42:7-14; *see also* Pl.'s Opp'n at 15, suggesting that FAA undertook a minimal evaluation of pertinent materials. Given the FAA's failure to comply with statutory procedural requirements, Tulsa Airports argues that the FAA Associate Administrator's action of December 31, 2012 was not a final order subject to the judicial review provisions of either Section 46110 or 47111. Pl.'s Opp'n at 4. Tulsa Airports bolsters this argument by pointing to statements in the letter of December 31 that invite Tulsa Airports to "resubmit" its request or to provide "additional information," implying the possibility of future adjustments in line with those made throughout the completion of the project. Pl.'s Opp'n at 4 (quoting letter of December 31). Moreover, Tulsa Airports notes that grant agreements generally qualify as contracts enforceable in this court. Pl.'s Opp'n at 7 (citing *City of Manassas Park v. United States*, 633 F.2d 181, 184 (Ct. Cl. 1980)). Therefore, rather than seeking "review" of an FAA order, Tulsa Airports contends that it was remitted to a contractual remedy and consequently framed its complaint as a standard breach-of-contract claim for already-incurred monetary damages, which it submits properly falls within the court's jurisdiction under the Tucker Act. *Id.* at 5-10.[8]

Tulsa Airports is correct that FAA failed to follow the requisite procedures specified in Subsection 47111 for withholding a payment under a grant agreement. The government

---

[8] For this position, Tulsa Airports relies on cases including *Mike's Contracting, LLC v. United States*, 92 Fed. Cl. 302 (2010), and *Americopters, LLC v. United States*, 95 Fed. Cl. 224 (2010). *See* Pl.'s Supplemental Brief in Opp'n to Def.'s Mot. to Dismiss Pl's. Compl. at 3-4, ECF No. 20. Those cases are distinguishable from the circumstances at issue here because the relevant claims in those actions did not amount to review of an order or a collateral attack of an agency order. *See Mike's Contracting*, 92 Fed. Cl. at 304 (raising tort and Fifth Amendment claims resulting from the FAA's suspension of an airworthiness certificate for a helicopter); *Americopters, LLC v. Federal Aviation Admin.*, 441 F.3d 726, 738 (9th Cir. 2006) (concluding that § 46110 did not apply in a case where plaintiffs sought just compensation under the Fifth Amendment for FAA employee actions requiring company to cease purportedly unsafe operations because "there is no pending FAA order and because there were no previous agency determinations on the merits.").


responds by asserting that this failure does not make a difference to the jurisdictional posture of this case because the decision of the FAA's Associate Administrator on December 31, 2012 was still an action that determined Tulsa Airports's rights and had legal consequences. *See* Def.'s Reply at 3 (citing *City of Dania Beach*, 485 F.3d at 1184). In this regard, the government relies exclusively on precedents applying Section 46110, emphasizing that, as a judge of this court commented, "[t]he term 'order,' for purposes of 49 U.S.C. § 46110, has been given 'expansive construction' by the United States courts of appeals." *Pucciariello*, 116 Fed. Cl. at 407 (quoting *Ligon v. LaHood*, 614 F.3d 150, 154 (5th Cir. 2010)).

Section 46110 is contained within 49 U.S.C. Subpart IV, entitled "Enforcement and Penalties," and more specifically within Chapter 461, entitled "Investigations and Proceedings." As such Section 46110 relates to and governs judicial review respecting a broad spectrum of actions by the Secretary of Transportation, the Under Secretary of Transportation for Security, and the Administrator of the FAA. *See* 49 U.S.C. § 46110(a). Not surprisingly, so long as an action by these officials has indicia of finality, courts of appeals have undertaken review of the action. Under Section 46110, no specific procedural steps are statutorily required to be taken by the Secretary or other officials of the Department of Transportation in acting on matters that are subject to review under that Section. *See* Hr'g Tr. 35:24-25 (government counsel's observation that "there's no regulatory regime in place for [a particular proceeding to occur prior to] the review process [under Section 46110]"). In effect, a broad and varied spectrum of actions by the Secretary and other officials are encompassed within the ambit of Section 46110, many if not most of which would fall into the category of "informal adjudication" as described in the germinative article by David P. Currie & Frank I. Goodman, *Judicial Review of Federal Administrative Action: Quest for the Optimum Forum*, 75 Colum. L. Rev. 1, 54-55 (1975) (referring to "[t]his amorphous and miscellaneous category" of administrative action as "'constituting the vast bulk of administrative adjudication'" (quoting Attorney General's Committee on Administrative Procedure, Final Rep. 35 (1951)); *see, e.g.*, *Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 593 (1980) (reviewing a letter that followed an exchange of letters).

Examples of matters considered by the courts of appeals to be within the sweep of Section 46110 include the orders at issue in *Ruskai v. Pistole*, __ F.3d __, 2014 WL 7272770 (1st Cir. Dec. 23, 2014) (reviewing the Transportation Security Administration's refusal to restrict use of pat-down searches at airport security checkpoints to accommodate individuals with metallic joint replacements); *Burdue v. Federal Aviation Admin.*, __ F.3d __, 2014 WL 7270532 (6th Cir. Dec. 23, 2014) (considering an order revoking an aircraft inspector's certification as an Airworthiness Representative–Maintenance); *SecurityPoint Holdings, Inc. v. Transportation Sec. Admin.*, 769 F.3d 1184, 1186 (D.C. Cir. 2014) (concluding that a letter from chief counsel of the Transportation Security Administration rejecting an advertising company's objections to changes to program involving advertisements at airport security checkpoints was a reviewable "order"); *GoJet Airlines, LLC v. Federal Aviation Admin.*, 743 F.3d 1168, 1170 (8th Cir. 2014) (considering FAA Acting Administrator's ruling that plaintiff violated FAA regulations by failing to make a logbook entry and remove a gear pin); *BMI Salvage Corp. v. Federal Aviation Admin.*, 488 Fed. Appx. 341, 345 (11th Cir. 2012) (reviewing FAA's final decision dismissing a complaint alleging unjust discrimination by a public-use, general aviation airport); *Dickson v. Federal Aviation Admin.*, 480 Fed. Appx. 263, 266 (5th Cir. 2012) (considering a letter to commercial pilot denying his application for an unrestricted first-class medical certificate);

*Avera v. Airline Pilots Ass'n Int'l*, 436 Fed. Appx. 969, 973 (11th Cir. 2011) (involving the "Age 60 Rule" providing that no pilot may serve as a pilot in operations of a commercial aircraft after reaching 60th birthday). Similarly, the decision by a judge of this court in *Pucciariello* held that a court of appeals had exclusive jurisdiction over a claim by a former employee of the FAA who had been appointed a designated airworthiness representative of the FAA but then had been dismissed from that position. *See* 116 Fed. Cl. at 409-10, 416 (ruling that jurisdiction under the Tucker Act had been supplanted by 49 U.S.C. § 46110).

By contrast the jurisdictional scope of Section 47111 is much more limited, being confined to payments under project grant agreements. Also by contrast, Section 47111 sets out rudimentary procedural notice-and-hearing steps that are to be followed by the Secretary or his delegate in withholding payments, as noted *supra*, at 7.

Ordinarily, "specific schemes trump general statutes." *Kannikal v. Attorney Gen. United States of America*, __ F.3d __, __, 2015 WL 252437, at *9 (3d Cir. Jan. 20, 2015). That is particularly true for jurisdictional provisions. *See Bormes*, __ U.S. at __, 133 S. Ct. at 18. Indeed, "the language of jurisdictional statutes is to be parsed with precision and fidelity to their express terms." *Boston Edison*, 64 Fed. Cl. at 176 (citing *Stone v. Immigration & Naturalization Serv.*, 514 U.S. 386, 405 (1985) (jurisdictional statutes "must be construed with strict fidelity to their terms") (in turn citing *Cheng Fan Kwok v. Immigration & Naturalization Serv.*, 392 U.S. 206, 212 (1968))).

The government did not, however, follow those precepts in presenting and arguing its motion to dismiss because it relied chiefly on the general jurisdictional statute, Section 46110, and only mentioned the specific statute, Section 47111, in a footnote. *See* Def.'s Mot. at 10 n.2. The government's reasoning in not starting with the premise that Section 47111 should apply to displace jurisdiction under the Tucker Act was that no precedent could be found relating to that statute:

> THE COURT: It seemed to the Court in looking at those two statutes that it was more likely that 47111(d)(3) applied in place of 46110 because 47111(d)(3) was more specific.
>
> MR. OH: Your Honor, I think that argument could be made. The fact of the matter is there's very little case law. In fact, I didn't find a single case concerning 47111. So, it's hard to argue based on the case law in the matter. But I do think that 47111 is instructive for our purposes because that statute expressly states that . . . the [g]overnment['s] refusal to reimburse certain costs under these grant agreements qualif[ies] as an order and then state[s] that those orders or determinations by the FAA are only appealable in the United States Court[s] of Appeal[s].
> This case is slightly different in the sense that this is not a [g]overnment refusal to reimburse in the first instance, but a [g]overnment request for reimbursement after it has already paid out the funds from the grant agreement. In that sense, 47111 is more specific. It applies in different circumstances, but I do think it's still instructive. There's

9

> just not any case law that I found explicating 47111 and whether it would
> apply to this instance.

Hr'g Tr. 5:21 to 6:18.

Although the court believes that this is an appropriate case for applying the precept that the specific trumps the general, and that the government has offered no meaningful rationale to the contrary, it is not actually necessary for the court to decide whether Section 47111 applies to Tulsa Airports's claim rather than Section 46110. Either would displace this court's jurisdiction under the Tucker Act and vest jurisdiction in either the United States Court of Appeals for the District of Columbia Circuit or, in this instance, the United States Court of Appeals for the Tenth Circuit. That does not necessarily end the court's analysis, however, because another jurisdictional contention has been advanced by the government, and the government also asserts that Tulsa Airports can have no claim in any circumstances. The court will address both of these postulates before proceeding to a disposition.

*B. Jurisdictional Time-Bar*

Notwithstanding the court's conclusion that jurisdiction in this court under the Tucker Act is displaced by provisions of 49 U.S.C. § 47111 or § 46110, the procedural circumstances of the case require the court to address also the government's assertion that the court lacks jurisdiction to entertain Tulsa Airports's claim under Grant 47 because it is barred by the six-year statute of limitations set forth in 28 U.S.C. § 2501. Def.'s Mot. at 12-13. 28 U.S.C. § 2501 provides that, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. A claim first accrues "when all the events have occurred that fix the alleged liability of the government and entitle the claimant to institute an action." *Ingrum v. United States*, 560 F.3d 1311, 1314 (Fed. Cir. 2009); *see also Oceanic S.S. Co. v. United States*, 165 Ct. Cl. 217, 225 (1964). Adherence to the six-year statute of limitations period serves as a condition of the government's waiver of sovereign immunity and constitutes a jurisdictional requirement. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008).

In the government's view, the date of accrual for Tulsa Airports's claim was July 26, 2006, the date when plaintiff reimbursed the government for costs deemed unallowable under Grant 47 because, "[a]t that point (possibly earlier), [plaintiff's] claim . . . could have been brought" and "all the events it relies upon to supports its claim were 'fixed.'" Def.'s Mot. at 12. Tulsa Airports resists the government's characterization and argues that the parties' course of dealing over the period of several years prevented the relevant events from being "fixed" and resulted in the deferment of the accrual of plaintiff's claim. First, Tulsa Airports notes that "both the [g]rant [a]greements and the [accompanying] [h]andbook governing their administration provide that any payments made thereunder could be adjusted upward or downward at any point up to the closing of the grants." Pl.'s Opp'n at 12 (citing Am. Compl. at ¶¶ 25-26). Moreover, Tulsa Airports observes that it was not an unusual practice for it to seek adjustments while a grant was open or after it was closed, and grants were at times reopened or amended. *Id.* Therefore, Tulsa Airports argues that the proper date of accrual for a claim involving Grant 47 was "September 26, 2012, the date the FAA closed both Grants notwithstanding [plaintiff's] outstanding requests for reimbursement (and the last day of the contracts)," or, alternatively,

10

"October 24, 2012 or December 31, 2012, the dates letters were sent by the FAA to [it]" declining to reimburse plaintiff's expenses. *Id.* at 13.[9]

While typically a claim based upon a contractual obligation of the government to pay money accrues on "the date when the payment becomes due and is wrongfully withheld in breach of the contract," it is also "necessary to ascertain the nature of the agreement that the parties have made on this point." *Oceanic S.S.*, 165 Ct. Cl. at 225 (internal citations omitted). Here, the parties entered agreements that allowed for adjustments, including modifications to future grants. *See, e.g.*, *supra*, at 3. Although Tulsa Airports reimbursed the government for expenses deemed unallowable under Grant 47 on July 26, 2006, that did not end the chain of events concerning Grant 47. Tulsa Airports submitted a request for reimbursement to the FAA in January 2012, but the FAA responded in a letter dated May 8, 2012, notifying plaintiff that Grant 47 needed to be fully closed "with all funds drawn down . . . before the FAA would consider [plaintiff's] request for reimbursement under either [Grant 47 or 50]." Pl.'s Opp'n at 13-14. The FAA's letter suggests that its decision regarding the status of the returned funds was not final as of May 2012. Indeed, it was not until September 26, 2012, that the FAA ultimately gave notice to plaintiff that Grant 47 was closed.[10] Subsequently, Tulsa Airports followed the FAA's instructions and renewed its request for reimbursement in a letter dated October 4, 2012, after which the FAA issued its October 24 Letter and then its December 31 Letter denying plaintiff's request. *See id.* The fact that the FAA opened the matter for reconsideration in 2012 suggests that Tulsa Airports had no way of knowing that its request to the government was definitively resolved until December 31, 2012, when the FAA finally rejected plaintiff's request for reimbursement; hence, its claim did not accrue until that time. *See Kinsey v. United States*, 852 F.2d 556, 557 n.* (Fed. Cir. 1988) ("[A] claim does not accrue unless the claimant knew or should have known that the claim existed.") (citing *Jones v. United States*, 801 F.2d 1334, 1335 (Fed. Cir. 1986)). Tulsa Airports's initial complaint, filed on November 14, 2013, was therefore well within the six-year limitations period prescribed under Section 2501.

Nonetheless, because the court concludes that its jurisdiction to hear plaintiff's claims under the Tucker Act has been displaced by 49 U.S.C. § 47111 or, in the alternative, by 49 U.S.C. § 46110, the applicable statute of limitations is not the six-year period defined under Section 2501 but rather the one codified within those Sections. Under Section 47111, an individual appealing an FAA order must file a petition in the United States Court of Appeals "not later than 60 days after the order is served on the petitioner." 49 U.S.C. § 47111(d)(3). Because the FAA apparently did not apply the rudimentary procedural requisites of Section 47111(d), such service may not have occurred and the time limits of that Section may not have been triggered. And, under Section 46110, "[t]he petition must be filed not later than 60 days after the order is issued," but "[t]he court may allow the petition to be filed after the 60th day only if there

---

[9]Alternatively, Tulsa Airports requests that the statute of limitations be equitably tolled. Pl.'s Opp'n at 13-15. Given the factual and procedural posture of the case, the court need not address the issue of tolling.

[10]The government argues that Grants 47 and 50 were both closed in 2006. Def.'s Reply at 7-9. However, the government itself concedes that in 2012 "[t]he grants were reopened" by the FAA. *Id.*

11

are reasonable grounds for not filing by the 60th day." 49 U.S.C. § 46110(a). As stated *supra*, the court need not determine which of the two sections applies; nor need it determine the precise date on which plaintiff's claim accrued. Further resolution of the issue of time-barring may be taken up by a court of appeals.

### C. Failure to State a Claim

Finally, the government seeks dismissal on the grounds of Tulsa Airports's failure to state a claim upon which relief may be granted. Dismissal is appropriate under Rule 12(b)(6) if the "facts asserted by the claimant do not under the law entitle him to a remedy." *Perez v. United States*, 156 F.3d 1366, 1370 (Fed. Cir. 1998). To survive a motion to dismiss for failure to state a claim, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In addition, the facts alleged must "'plausibly suggest[] (not merely [be] consistent with)' a showing of entitlement to relief." *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). While the complaint "does not need detailed factual allegations," *Twombly*, 550 U.S. at 545, it must present more than "'naked assertion[s] devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557) (alteration in original), or "the-defendant-unlawfully-harmed-me-accusation[s]," *id.* (citing *Twombly*, 550 U.S. at 555). In determining whether the plaintiff has pled adequate facts to allow the court to infer that his or her entitlement to relief is plausible—not merely possible—the court must "draw on its judicial experience and common sense," *id.* at 679, and "must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff," *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009) (citing *Papasan v. Allain*, 478 U.S. 265, 283 (1986); *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).

The government argues that Tulsa Airports fails to state a claim because it has "failed to adequately plead that it suffered any damage." Def.'s Mot. at 13.[11] Specifically, the government states that Tulsa Airports "admits that it has exhausted both grants and received all the money contemplated in both agreements." *Id.* at 14. In the government's view, because the money sought by Tulsa Airports was never contemplated by either grant agreement and exceeded the dollar limitations for each grant, any damages "would amount to extra-contractual recovery." *Id.*

The government's argument ignores both the statutory authority granted to the FAA to modify initial award amounts and the parties' course of dealing. Under 49 U.S.C. § 47108(b), the FAA is authorized to increase the maximum amount that the government may pay by up to

---

[11]Suffering damages is one of the four essential elements of a breach-of-contract claim, which include: (1) the existence of a contract; (2) a duty arising out of that contract; (3) a breach of the duty; and (4) damages caused by the breach. Def.'s Mot. at 13 (citing *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989)).

fifteen percent for grants approved after September 30, 1987, which includes Grants 47 and 50. *See* Pl.'s Opp'n at 16 (citing 49 U.S.C. § 47108(b)).[12] Notably, the FAA had previously increased the grant amounts in connection with Tulsa Airports Noise Abatement Program, including specific upward adjustments to Grants 47 and 50. Hr'g Tr. 50:9-51:5; Pl.'s Opp'n at 16-17 (citing Am. Compl. ¶ 27). As Tulsa Airports notes, "[i]t was not unusual for grants to be reopened or amended" or for "costs not reimbursed under one grant [to be] charged to another." Pl.'s Opp'n at 16. Therefore, the fact that Tulsa Airports received the nominal amounts promised by the FAA in Grants 47 and 50 does not preclude plaintiff from claiming $705,913.40 in damages associated with delay costs incurred while carrying out the project. The 15% limitation reportedly has not yet been exceeded for either of the Grants. Tulsa Airports has adequately stated a claim upon which relief can be granted.

## II. Transfer

Ordinarily, dismissal is required as a matter of law if a court lacks jurisdiction to decide the merits of a case. *Johnson v. United States*, 105 Fed. Cl. 85, 91 (2012). However, under some circumstances, a federal court that lacks jurisdiction over a case may transfer the action to a federal court that does have jurisdiction. *See Gray v. United States*, 69 Fed. Cl. 95, 98 (2005). Pursuant to 28 U.S.C. § 1631, transfer of a case is appropriate if "(1) the transferor court lacks jurisdiction; (2) the action could have been brought in the transferee court at the time it was filed; and (3) transfer is in the interest of justice." *Zoltek Corp. v. United States*, 672 F.3d 1309, 1314 (Fed. Cir. 2012); *see also Skillo v. United States*, 68 Fed. Cl. 734, 744 (2005) (citing *Kolek v. Enyen*, 869 F.2d 1281, 1284 (9th Cir. 1989); *Rodriguez v. United States*, 862 F.2d 1558, 1559-60 (Fed. Cir. 1988); *Sodexho Marriott Mgmt., Inc. v. United States*, 61 Fed. Cl. 229, 241 (2004)).[13]

Under the circumstances presented, all three prerequisites of 28 U.S.C. § 1631 are satisfied. First, as explained *supra*, the court lacks subject matter jurisdiction to adjudicate Tulsa Airports's claims due to the displacement of jurisdiction under the Tucker Act by 49 U.S.C. § 47111, or alternatively 49 U.S.C. § 46110. Under either of these statutes, Tulsa Airports's claims originally could have been filed in either of two federal court of appeals. Section 47111 stipulates that a party may file its petition "in the United States Court of Appeals for the District

---

[12]In pertinent part, Section 47108 states: "For a project receiving assistance under a grant approved under the Act . . . the amount [stated in the offer as the maximum amount the government will pay] may be increased . . . for an airport development project, by not more than 15 percent . . . ." 49 U.S.C. § 47108(b)(3)(A).

[13]Section 1631 provides, in relevant part:

[T]he court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631.

of Columbia Circuit or in the court of appeals of the United States for the circuit in which the project is located." 49 U.S.C. § 47111(d)(3). Section 46110 allows a party applying for review of an order to file a petition for review "in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business." 49 U.S.C. § 46110(a). Accordingly, Tulsa Airports's claim could have been brought before the United States Court of Appeals for the District of Columbia Circuit or the United States Court of Appeals for the Tenth Circuit, the territorial reach of which encompasses Tulsa, Oklahoma, plaintiff's principal place of business and the location of the Noise Abatement Program.[14] Finally, transfer would be in the interest of justice because Tulsa Airports has not yet had an opportunity to have its claims heard on the merits and the United States Courts of Appeals were specifically designated by Congress as the appropriate fora for adjudication of claims of the type raised by plaintiff. *See Galloway Farms, Inc. v. United States*, 834 F.2d 998, 1000 (Fed. Cir. 1987) ("The phrase 'if it is in the interest of justice' relates to claims which are nonfrivolous and as such should be decided on the merits.") (citing *Zinger Construction Co. v. United States*, 753 F.2d 1053, 1055 (Fed. Cir. 1985)); *cf. Johnson*, 105 Fed. Cl. 96 (declining to transfer case where plaintiff had already brought two actions in transferee court on the same subject).

The parties have indicated to the court that they would prefer that the court transfer the case to the United States Court of Appeals for the Tenth Circuit. *See* Hr'g Tr. 54:18-22. Accordingly, the court shall transfer the case to that court.

## CONCLUSION

For the reasons stated, the government's motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted is DENIED. Pursuant to 28 U.S.C. § 1631, the case shall be transferred to the United States Court of Appeals for the Tenth Circuit. The clerk is directed to effectuate the transfer.

---

[14] As discussed, *supra*, Sections 46110 and 47111 each require that petitions be filed within 60 days of the applicable FAA order. However, Section 46110 states that the court may allow a petition to be filed after the 60th day if there are "reasonable grounds for not filing by the 60th day." 49 U.S.C. § 46110(a); *see also* Hr'g Tr. 52:18-23. Given the parties' course of dealing, discussed *supra*, at 3-4, the transferee court may find that such "reasonable grounds" existed here. *See Ligon*, 614 F.3d at 158 n.5 (declining to transfer where plaintiff filed a claim in the district court 90 days after the FAA issued its relevant order because plaintiff "has provided no reasonable grounds for his failure to file by the 60th day, so § 1631 cannot save him from the procedural requirements of § 46110."); *cf. Johnson*, 105 Fed. Cl. at 95 (declaring transfer improper where plaintiff's tort claims manifestly would not have been filed within the transferee court's limitations period). Additionally, the absence of compliance by the FAA with the procedural requirements of 49 U.S.C. § 47111(d), may mean that the limitations period specified in that Section was never triggered. *See supra*, at 11-12. In either setting, Tulsa Airports would have a potentially viable argument that its claim is timely in a court of appeals.

It is so ORDERED.

                                                s/ Charles F. Lettow
                                                Charles F. Lettow
                                                Judge